474

[Civ. No. 11466. First Dist., Div. One.—June 20, 1941.]

THE PEOPLE, Respondent, v. UNITED STATES FIDELITY & GUARANTY COMPANY (a Corporation), Appellant.

Horace W. B. Smith for Appellant.

Earl Warren, Attorney-General, and J. Albert Hutchinson and James E. Sabine, Deputies Attorney-General, for Respondent.

PETERS, P. J.—The defendant company appeals from a judgment in favor of the State determining that defendant as surety for the Bailey Brewing Company is liable for taxes assessed by the State Board of Equalization under the California Beverage Tax Act (Stats. of 1933, chap. 178, p. 625), in connection with the sale of beer manufactured by the Bailey Brewing Company and sold by the receiver of that company pursuant to a court order of the bankruptcy court.

The California Beverage Tax Act, *supra*, section 2, requires every manufacturer of beer to secure a license from the state board to engage in that business. The same section requires the applicant for a license to accompany his application with a corporate surety bond "conditioned upon faithful performance of all of the requirements of this act and expressly providing for the payment of all excise taxes, penalties and other obligations of such person, arising out of this act." Section 3 provides that the license shall not be assignable and shall be valid only for the person in whose name it is issued. Section 5 of the act imposes on beer sold by a manufacturer an excise tax of sixty-two cents per barrel.

The facts giving rise to the present proceeding were stipulated to by the parties. It appears that prior to April 1, 1935, the Bailey Brewing Company, a California corporation, was duly licensed to manufacture and sell beer. Pursuant to the provisions of section 2 of the California Beverage Tax Act, *supra*, the company had secured from defendant and delivered to the state board a $1,000 surety bond conditioned as set forth in the section. While the license and bond were in full force and effect, on April 1, 1935, a petition in involuntary bankruptcy was filed against the Bailey Brewing Company, and on the same day one Hubert F. Langham was appointed receiver for the company. At the time that Langham was appointed the brewing company had on hand over 1200 barrels of beer manufactured by it. On April 4, 1935, Langham petitioned the bankruptcy court for authority to sell the beer. Among other things, the petition recited that the sale of the beer would be subject to the sixty-two cents per barrel state tax, and that the receiver did not intend to operate the brewery. It was also recited that the tax would be paid from the purchase price received. This petition was granted and the beer sold. Neither the receiver, the Bailey Brewing Company, nor the defendant surety has paid the state tax on this sale, nor was the tax paid in the bankruptcy proceeding. After the sale of the beer, a trustee in bankruptcy was appointed and the Bailey Brewing Company has since been discharged as a bankrupt.

On this state of facts the trial court concluded that the tax, amounting to $641.67, plus interest, was properly assessed against the Bailey Brewing Company, and that the defendant surety company is liable therefore on its bond.

It is contended by the appellant surety company that the license of the Bailey Brewing Company to manufacture and sell beer was personal to it and did not inure to the benefit of the receiver; that such license terminated upon the appointment of the receiver; that the receiver was a liquidating as distinguished from an operating receiver; that the surety on a licensee's bond for the manufacture and sale of beer, is not liable for taxes on beer manufactured by the licensee but sold by a liquidating receiver of the licensee. The appellant concedes that, since it is a compensated surety, the rule of strict construction of its obligation does not obtain, and that the bond is to be liberally construed to effect its object. It is also conceded that neither the liability of the surety, nor of the licensee, if they are liable for these taxes, was affected by the discharge in bankruptcy, and that the sale by the receiver was a taxable sale, since such officers are required to comply with local law and pay state taxes. Appellant's sole contention, as noted above, is that the bond covers only sales of beer where the beer is both manufactured and sold by the licensee, and that it does not secure payment of the excise tax on beer manufactured by the licensee but sold by the liquidating receiver. Appellant suggests that the receiver's bond, conditioned that he would faithfully perform his duties, rather than the bond filed by the Bailey Brewing Company, should protect the state in its claim.

It is appellant's theory that the license of the Bailey Brewing Company to manufacture and sell beer, or the right to exercise that license, terminated with the appointment of the receiver, with the result that the beer was not sold under the license, so that the tax was not due either from the brewing company or its surety. It is the basis of appellant's position that the receiver in making the sale was not the agent or representative of the Bailey Brewing Company, but either the agent or representative for the creditors, or acting independently of the corporation and the creditors. This position is unsound. The beer had already been manufactured by the licensee under the license. The receiver acted for and on behalf of the corporation in making the sale, as well as on behalf of the creditors. The receiver acted in place of the board of directors. The powers of the board of directors were immediately suspended upon the appointment of the receiver. The receiver, by virtue of his appointment,

succeeded to the powers of the board of directors and thereafter acted in a dual capacity—as the representative or agent of the creditors, and as agent or representative of the corporation. There are many cases establishing the rule that a receiver of a corporation is the agent and representative of the corporation for most purposes. (*Scott* v. *Hollingsworth,* 215 Cal. 314 [9 Pac. (2d) 836, 82 A. L. R. 995]; *Verder* v. *American Loan Society,* 1 Cal. (2d) 17 [32 Pac. (2d) 1081]; *North* v. *Cecil B. DeMille Productions, Inc.,* 2 Cal. (2d) 55 [39 Pac. (2d) 199]; *Camerer* v. *California Sav. etc. Bank,* 4 Cal. (2d) 159 [48 Pac. (2d) 39, 100 A. L. R. 667]; see, also, *New York Terminal Co.* v. *Gaus,* 204 N. Y. 512 [98 N. E. 11]; *Central Trust Co.* v. *New York City & N. R. Co.,* 110 N. Y. 250 [18 N. E. 92, 1 L. R. A. 260].) Under these authorities, when the receiver sold the beer manufactured by the licensee he was clearly acting on behalf of both the corporation and its creditors, and, in so doing, exercised the rights conferred by the license issued to the corporation. The bond was given for the express purpose of securing the payment of the excise taxes. It would be a most anomalous situation if, where the bond is needed most—that is, where the licensee is bankrupt—the surety should be released from liability. Fortunately, there is no compelling rule of law that requires such a holding, and there are several authorities that sustain the view that the surety is liable under such circumstances.

In *City of Montpelier* v. *National Surety Co.,* 97 Vt. 111 [122 Atl. 484, 33 A. L. R. 489], a bond was given to secure performance of construction work. The company went into receivership, and the receiver continued the work. An action was brought against the receiver for violation of the contract in a portion of the work performed by him. Against objections very similar to the ones urged by appellant in the present case, the court held that the bond applied and that the surety was liable. The same rule was applied in *United States* v. *Bailey,* 178 Fed. 302, where the surety had executed a bond to indemnify the United States for damage to public property growing out of the operation of the railroad. The corporate principal went into receivership, and the bond was violated by negligent injury to public property after the receiver had taken possession. The surety was held liable.

Appellant attempts to distinguish these and the other cases cited on the ground that they involved operating receivers while the instant case involves a liquidating receiver. There are no doubt many legal and statutory distinctions between the powers and duties of operating and liquidating receivers, but, it is our opinion that, in selling the beer already manufactured by the Bailey Brewing Company, the receiver was clearly acting on behalf of the corporation, as well as the creditors, and for that reason he was acting under the license secured by the Bailey Brewing Company.

None of the cases cited by appellant compels or even suggests a contrary result. *Rumford* v. *Boston Grocery Co.,* 111 Me. 116 [88 Atl. 394], involved a situation where the defendant secured a license to keep a pool hall and filed a bond conditioned that gambling would not take place therein, and that the pool hall would not remain open after certain hours. Thereafter, the defendant rented the premises and equipment to a third person, who violated the provisions of the permit. It was held that the bond did not cover operations of the tenant. *Lyman* v. *Cheever,* 168 N. Y. 43 [60 N. E. 1047], also cited by appellant, involved a situation where a bond was required to secure a liquor license. The licensee surrendered his license, and thereafter violated the conditions of the permit. The court properly held the surety was not liable. These cases are obviously not in point.

Appellant also cites *United States* v. *Whitridge,* 231 U. S. 144 [34 Sup. Ct. 24, 58 L. Ed. 159], which held that a corporation operated by a receiver in bankruptcy was not subject to the excise or privilege tax imposed by the United States Corporation Laws of 1909 upon the carrying on or doing business by a corporation, for the reason that the receiver was acting as an officer of the court and not as an officer of the corporation, and that the appointment of the receiver constituted an ouster of corporate management. That case, decided in 1913, turned upon the language of the particular statute involved, and upon the legal situation that existed before the passage of the Sixteenth Amendment to the Federal Constitution.

There is nothing in the decision of *In re California Pea Products,* 37 Fed. Supp. 658, cited at the oral argument, that assists appellant. It held that a liquidating receiver could not be compelled to secure a license under the Cali-

fornia Sales Tax Act. That does not determine whether under a statute such as is here involved the receiver acts under the license of the bankrupt.

Appellant's suggestion that the receiver's bond should be held liable and not the surety for the licensee is clearly without merit. If the surety for the manufacturer is not liable it would be only because the tax is imposed on a *manufacturer and seller* of beer, and the licensee manufactured the beer in question but did not sell it. By the same reasoning, the receiver sold the beer but did not manufacture it. As a result of such reasoning, neither surety would be liable, and the state would lose the tax. The very purpose of the bond provision in the statute is to assure the state that the tax will be paid.

It is our view, that, under the terms of the statute, considering its language and purposes, and under the rule laid down in the above-cited cases, the receiver was acting under the license in selling the beer already manufactured by the licensee, and that the appellant surety is liable for the tax.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

A petition for a rehearing was denied July 19, 1941, and appellant's petition for a hearing by the Supreme Court was denied August 18, 1941. Curtis, J., and Edmonds, J., voted for a hearing. Traynor, J., did not participate therein.